# UNITED STATES DISTRICT COURT

__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

EWA WIKTORCZYK

(Name and Address of Defendant)

**MAGISTRATE JUDGE KEYS**

**CRIMINAL COMPLAINT**

CASE NUMBER:

**07CR 714**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about ___December 23, 2003___ in ___Cook___ county, in the ___Northern___ District of ___Illinois___ defendant(s) did, (Track Statutory Language of Offense)

knowingly devise, intend to devise, and participate in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises,

in violation of Title ___18___ United States Code, Section(s) ___1341___.

I further state that I am a __Special Agent of the FBI__ and that this complaint is based on the following
<sub>Official Title</sub>
facts:

See attached Affidavit

**FILED**

OCT 3 1 2007

*10-31-07*

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

Continued on the attached sheet and made a part hereof: __X__ Yes ___ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

__October 31, 2007__
Date

at __Chicago, Illinois__
City and State

__Magistrate Judge Arlander Keys__
Name & Title of Judicial Officer

_Arlander Keys_
Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Paul K. Zukas, being duly sworn, state as follows:

1. I am a Special Agent (SA) of the Federal Bureau of Investigation assigned to the Chicago Division and have been so employed since August 2003. I am currently assigned to a White Collar Crime Squad. I previously was assigned to a Eurasian Organized Crime Squad and have conducted criminal investigations of Eurasian gangs and other criminal organizations.

2. In my capacity as an FBI Agent, I have received training in the enforcement of federal criminal laws under the investigative jurisdiction of the FBI, including but not limited to violations of Title 18. I have participated in a wide variety of investigations including narcotics investigations, wire fraud, mail fraud, immigration fraud, bank fraud, health care fraud, and illegal use of interstate communications. Additionally, I have used and become familiar with all normal investigative techniques, including but not limited to various types of surveillance, consensual monitoring and recording of both telephonic and non-telephonic communications, use of pen registers, interviewing and interrogation of subjects and witnesses, and debriefing of witnesses and informants. I have also been involved in the use of sophisticated techniques such as Title III wire interceptions. I have also participated in numerous consensual searches and search warrants which have led to the seizure of narcotics, false documents such as passports, and other items of evidence.

3. This affidavit is in support of an arrest warrant and complaint charging EWA WIKTORCZYK with mail fraud in violation of Title 18, United States Code, Section 1341.

4. This affidavit is based on my personal knowledge, and on information furnished to me by other law enforcement personnel or obtained during the course of my investigation.

5. This affidavit contains information necessary to support probable cause for this application. It is not intended to include each and every fact and matter observed by me or known to the government.

6. In approximately November 2004 the FBI began an investigation into the activities of a group of individuals of Polish ethnicity involved in the staging of phony automobile accidents in Chicago. The investigation determined that the ringleader of this group is named JAN WIKTORCZYK, a/k/a KRZYSZTOF KOWALSKI, a/k/a TADEUSZ DZIEWONSKI (hereinafter "JAN"), and that JAN and his confederates utilized a vehicle body shop owned and operated by JAN called AAAA AUTO CARE, INC. (hereinafter "AAAA") located at 4919 W. Diversey Ave., Chicago, Illinois. According to information contained in criminal and public records I have reviewed, JAN has a date of birth of 4/29/1955 and is a legal permanent resident of the United States.

7. The investigation revealed that JAN is the ringleader of a "staged" or fraudulent vehicle accident enterprise in the Chicago area wherein salvage vehicles (i.e., vehicles that have been severely damaged in accidents or floods and therefore declared "total losses" by an insurance company) purchased from auction by AAAA are used in pre-planned and staged

1

accidents with other AAAA- purchased vehicles or with vehicles owned by individuals willing to engage in the scheme. The purpose of this scheme is to defraud the vehicle insurance companies out of monies paid out on insurance policies after the false accidents have been executed and resultant fraudulent insurance claims filed by the perpetrators.

8.  The investigation further revealed that JAN's adult daughter EWA WIKTORCZYK (hereinafter "EWA") was involved in and benefited financially from this criminal scheme. EWA moved from Chicago to London, England approximately three years ago, and information derived from criminal and public records and the course of this investigation shows that EWA currently resides in London, England at the address of 5 Saint John, Putney SW152AJ, and that her date of birth is 10/27/1979. Records further show that EWA was born in Poland but became a naturalized United States citizen on 09/06/2002.

9. On October 18, 2007, I learned from FBI agents stationed at O'Hare airport that EWA returned to the United States from London, England that night and planned to stay at her mother's house at 4443 N. Melvina St in Chicago for two weeks, until October 31, 2007, when she is scheduled to fly back to London Heathrow Airport on British Airways flight # 298 at 8.55 PM.

Background of Investigation:

10.  In July 2004, investigators from the National Insurance Crime Bureau (NICB) provided information to the FBI that showed that JAN, through his operation of AAAA, was involved in fraudulent vehicle accidents and false vehicle thefts. Initial investigation showed that JAN and AAAA would purchase salvage vehicles from car auctions, make repairs to the vehicles at AAAA, and then sell them. Initial findings by NICB investigators showed a high frequency of car accidents involving vehicles that were purchased from salvage by JAN and AAAA. On many occasions, AAAA salvage vehicles were reported as being involved in accidents with other AAAA salvage vehicles. This led NICB investigators to believe that a large number, if not all, of these reported vehicle accidents were in fact pre-planned and fraudulent.

11.  After receiving this information from the NICB investigators, I investigated approximately 40 automobile accidents involving AAAA vehicles that I believe were staged between 2002-05. In addition, I have interviewed approximately 16 insurance claimants who admitted participating in fraudulent, staged vehicle accidents with AAAA salvage vehicles they had purchased, or with AAAA salvage vehicles driven by other drivers involved in the alleged accidents. An examination of vehicle accident insurance claims showed that EWA filed fraudulent insurance claims and received monies from insurance companies as a result of staged vehicle accidents involving AAAA vehicles and the same 2002 Lexus automobile on three separate occasions during 2003 and 2004. The following is a summary of those three fraudulent claims:

November 14, 2003 Staged Accident:

12.  On November 14, 2003 at approximately 10:30 PM a three car accident allegedly occurred at the intersection of Laramie and Peterson Streets in Chicago, Illinois.

13.   Claims on this accident were filed with STATE FARM INSURANCE, claim#: 138405192, by two claimants.   One of the claims was filed by AAAA AUTO CARE as the owner of a 2000 Daewoo, VIN#: KLATC5267YB480175, allegedly driven by a Polish national named TOMASZ KLEPKA.   This vehicle was originally a salvage vehicle purchased by AAAA on June 9, 2000.   At the time of this alleged accident, the vehicle had AAAA dealer plates that showed the car registered with AAAA AUTO BODY at 4919 W. Diversey, Chicago, Illinois. KLEPKA was an employee of AAAA at approximately the time this accident occurred.

The second claimant was EWA, who was allegedly driving a 2002 Lexus IS 300, VIN#: JTHBD192820044949. This Lexus was also originally a salvage vehicle purchased by AAAA from auction on November 18, 2002.   EWA was issued a Kentucky rebuilt title for the Lexus on July 17, 2003, and later an Illinois title application for the Lexus was filed by EWA on August 25, 2003.

The insured in this accident was a Polish national named MARIUSZ GADULA who was purportedly driving a 1996 Ford Mustang, VIN#: 1FALP4440TF116898.   This vehicle was not an AAAA salvage vehicle although my investigation revealed that GADULA and JAN were close associates for 4-5 years prior to this fake accident.

14.   I have reviewed telephone subscriber records for a T-Mobile cell telephone, number 773-875-6115, for the period January 1, 2003 through December 31, 2004. These records demonstrate that EWA is the registered subscriber of this phone number. However, my investigation has demonstrated that JAN uses this phone to plan and control staged accidents, as indicated by the following:

   a.   On November 19, 2004, a cooperating witness (CW1) made a recorded telephone call to JAN in which CW1 called JAN at 773-875-6115.
   b.   On October 6, 2005, another cooperating witness (CW2) admitted to me his participation in three separate staged accidents organized by JAN, including one on February 3, 2004. CW2 told me that JAN coordinated these accidents over his cell phone, and he (CW2) spoke to JAN on his cell phone immediately before the February 3, 2004 fake accident. CW2 told me that JAN gave him explicit directions over the cell phone as to the exact moment CW2 should pull his car into the traffic in order to be struck by the other car in the staged accident. CW2 told me that JAN's cell number was 773-875-6115.
   c.   On December 15, 2005, a third cooperating witness (CW3) made a recorded telephone call to JAN in which CW3 called JAN at 773-875-6115.
   d.   On June 2, 2006, a fourth cooperating witness (CW4) admitted to me her participation in three separate staged accidents organized by JAN. CW4 was also one of the participants in the February 3, 2004 staged accident, one of the same phony accidents CW2 participated in. CW4 also told me that she had spoken to JAN on cell phone number 773-875-6115 both immediately before and after the staged accident.

3

e. I have examined the call detail data for cell number 773-875-6115 for the period January 1, 2003 through December 31, 2004, and these records show many calls between the cell phone and other phone numbers I have identified as belonging to participants in staged accidents involving AAAA vehicles.

15. On August 26, 2005, I interviewed TOMASZ KLEPKA about the November 14, 2003 accident involving EWA and the 2002 Lexus described above in paragraphs 12 and 13. Among other things, KLEPKA told me that his cell phone number was 224-595-1112. Analysis of JAN's cell phone number 773-875-6115 for November 12-14, 2003 showed a total of sixteen (16) calls between JAN's cell phone and KLEPKA's cell phone, including twelve (12) separate calls between KLEPKA and JAN in the one hour before the alleged accident between KLEPKA, GADULA, and EWA, at 9:30 PM, 9:35 PM, 9:42 PM, 9:45 PM, 9:49 PM, 9:50 PM, 9:56 PM, 9:57 PM, 10:00 PM, 10:06 PM, 10:12 PM, and 10:26 PM. This activity is consistent with the statements of CW2 and CW4 described above regarding JAN's orchestration of the events surrounding staged accidents, and I believe demonstrates that JAN organized the November 14, 2003 phony accident in which EWA participated.

16. State Farm records for this claim showed that EWA and AAAA received a check from STATE FARM INSURANCE for the amount of $6,709.52 as a result of this fraudulent accident. A copy of this check shows that it was endorsed by EWA. Another check in the amount of $4,135.02 was issued by the insurance company to AAAA AUTO CARE with the reporting party listed on the payout as EWA. The total payout for the fraudulent accident which occurred on November 14, 2003, was $23,979.43.

December 19, 2003 Staged Accident:

17. On September 15, 2005, I interviewed another cooperating witness (CW5) concerning an alleged vehicle accident that purportedly occurred on December 19, 2003. CW5 admitted to me that the vehicle accident which occurred on December 19, 2003 at approximately 10:24 PM was in fact a fraudulent, staged accident orchestrated by JAN.

18. CW5 advised that he had been having engine trouble with his vehicle, a 1997 Plymouth Breeze. CW5 took the vehicle to AAAA for repair and JAN proposed that CW5 participate in a fake vehicle accident with JAN. Sometime later, CW5 said that he was instructed by JAN to come to AAAA one evening. When CW5 arrived at AAAA he was driven by a young Polish male to a place where his Plymouth had already been pre-positioned in an accident with two other vehicles, a Jeep and a Lexus. CW5 stated that the Plymouth already had damage on it and the Jeep appeared to have damage on the front side, and the Lexus had damage on the side and appeared to have no driver as it was parked on the side of the street. CW5 said that JAN was already at the scene of the accident and told CW5 to lie to the police and tell them that he (CW5) was actually driving the Plymouth when CW5 ran a stop sign and caused the three car accident. CW5 said that he was very upset and scared and did not want to participate in the scheme at this time but he continued anyway. JAN told CW5 that everything would be taken care of. When the police arrived at the scene of the staged accident, CW5 said that he told the police the false story he had been instructed to tell by JAN even though he knew it was a lie and the accident was fake. CW5 said that JAN left the accident scene before the police arrived and hid in another

4

vehicle parked on a side street. CW5 stated that another person, a young Polish male (First Name Unknown (FNU), Last Name Unknown (LNU)) who CW5 assumed was the owner of the Jeep, was also at the scene. CW5 said that JAN had instructed FNU LNU to tell the police that CW5 was driving the Plymouth and was at fault for the accident.

19. Claims on the December 19, 2003 accident were filed with GEICO INSURANCE, claim#: 0225819650101019, by two claimants. Claimant #1 was a Polish national named MARCIN TCHORZEWSKI who was allegedly driving a 1999 Jeep Grand Cherokee, VIN#: 1J4GW58S6XC652947. This Jeep Grand Cherokee was originally a salvage vehicle purchased by AAAA on November 5, 2003. TCHORZEWSKI was issued a temporary Illinois license plate for the vehicle on December 1, 2003. Claimant #2 was EWA, and her claim alleged that she was the owner of the 2002 Lexus IS300, VIN#: JTHBD192820044949, the same vehicle involved in the previously-described fraudulent accident on November 14, 2003.

20. GEICO records for this claim showed that EWA received two checks totaling $11,424.92 as a result of this fraudulent accident. The first check for $11,124.92 issued to EWA and AAAA by GEICO was for auto property damage. The second check issued to EWA by GEICO was for $300.00 for loss of use. Copies of these payout checks showed that both were endorsed by EWA. The total payout for the fraudulent accident which occurred on December 19, 2003, was $23,091.47.

May 5, 2004 Staged Accident:

21. On February 15, 2006, I interviewed an additional cooperating witness (CW6) concerning a vehicle accident he allegedly was involved in on May 5, 2004. CW6 told me that this accident was in fact a fraudulent, staged accident orchestrated by JAN. CW6 stated that the car he was driving during the staged accident was a 2000 Infiniti I30 he had purchased from JAN and AAAA. According to NICB, the 2000 Infiniti I30, VIN#: JNKCA31A3YT200995, was sold to AAAA for salvage on October 12, 2000, and was purchased by CW6 from AAAA on April 20, 2002. CW6 admitted that JAN instructed him to use the Infiniti to hit another car that was also participating in the fake accident. This second car, which CW6 said was a Jaguar, would in turn strike a Lexus which was the third car involved in the fake accident.

22. CW6 further stated that he received calls on his cell phone number 773-556-6538 from JAN on the day of the accident in order to plan and properly execute the fraudulent accident. An analysis of telephone calls on JAN's cell phone number 773-875-6115 on May 4 and 5, 2004 showed seven (7) calls between JAN's cell phone and CW6's cell phone. Specifically, the records show that JAN called CW6 at 11:03 PM on May 4, 2004 in a call logged at one (1) minute. Another call from JAN to CW6 was placed at 11:17 PM for one (1) minute, and at 11:25 PM JAN's phone records reflect an incoming call from CW6's cell phone lasting one (1) minute. Subsequently, JAN placed a call to CW6 at 11:50 PM for one (1) minute, and approximately twenty minutes after the phony accident was staged, the phone records show a one (1) minute call from JAN to CW6 at 12:48 AM on May 5, 2004. Once again, this pattern of cell phone calls to and from JAN's cell phone indicate JAN's active organization of the phony accident.

23. C2 also admitted to giving a false statement to the police at the staged accident scene at JAN's direction.

24. Claims on the May 5, 2004 accident were filed with ALLSTATE INSURANCE, claim#: 1017175280B02, by two claimants. Claimant #1 was a Polish national named STANISLAW SZCZERBINSKI who was driving a 2000 Jaguar XJ8, VIN#: SAJDA14CXYLF07138. This Jaguar was originally a salvage vehicle purchased from auction by AAAA on August 1, 2003. SZCZERBINSKI, a former employee of AAAA, was issued an Illinois vehicle title for the Jaguar on February 8, 2004. Claimant #2 was EWA, who alleged that she was the owner of the 2002 Lexus IS300, VIN#: JTHBD192820044949, the same vehicle allegedly involved in the November 14, 2003 accident, as well as the December 19, 2003 accident.

25. ALLSTATE's records for this claim show that EWA and AAAA received a check in the amount of $5,168.98 as a result of this fraudulent accident. A second check in the amount of $7,112.10 was issued to EWA only. The total payout for the fraudulent accident which occurred on May 5, 2004 was $29,633.08.

26. Based on the facts set forth in this affidavit, I have probable cause to believe that EWA WIKTORCZYK has committed mail fraud in violation of Title 18, United States Code, Section 1341.

FURTHER AFFIANT SAYETH NOT

_____
Paul K. Zukas, Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN TO ME BEFORE
THIS 31 st DAY OF OCTOBER, 2007.

_____
MAGISTRATE JUDGE

6